Austin R. MOODY et ux., Appellants,

v.

Mark WHITE, Attorney General of Texas, Appellee.

No. 1414.

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 28, 1979.

John W. Hennessey, Corpus Christi, for appellants.

Mark White, Atty. Gen. of Texas, Richard E. Lowerre, Asst. Atty. Gen., Austin, for appellee.

## OPINION

YOUNG, Justice.

The Attorney General of Texas brought this suit August 11, 1976, against Austin R. Moody and Dorothy K. Moody to enforce the Texas Open Beaches Act.[1] The plaintiff requested a finding that the public has the right of use and easement to and over an area claimed by the defendants extending from the line of mean low tide to the line of vegetation in the City of Port Aransas, Mustang Island, on its seaward shore on the Gulf of Mexico. Also the plaintiff sought, among other things, a mandatory injunction requiring the removal of defendants' structures existing on that area of the beach in question.

The defendants answered by alleging, among other things, that they claim title from the State of Texas to the water's edge by direct patent in an unbroken chain deraigned from sovereignty.

The case went to trial before a jury on May 1, 1978. Based upon the jury's verdict the trial court entered judgment against the defendants decreeing that the public has acquired the right of use and easement to and over the beach area in question and ordering the defendants to remove their structures (specifically Kody's Kabana Motel and Lounge) from the area. Defendants appeal. We affirm.

The evidence presented to the jury consisted of testimony from many people from all walks of life who were familiar with the region: geologists and oceanographers who had studied the island for many years, longtime residents who had watched the people of Texas use the beach for over forty years, commercial fishermen who had relied on the beach and the Gulf as their source of income, law enforcement officials who patrolled the beach area, ferryboat operators who had guided the boats which carried the public to and from the island, public officials who had made policy that controlled the beaches. All of these witnesses presented their recollections of the use of the beach. In particular, they talked about the use of the beach in the area now claimed by the appellants as their property.

The jury found that the structure, Kody's Kabana Motel, was on public property acquired by easement, dedication, and custom. The presence of this building interfered with the public's right of way, free ingress and egress, and right to use the beach. Based on these jury findings, the trial court in its judgment decreed that the public has free and unrestricted right of ingress and egress to, and the right of use and easement to and over the beach. The court also issued a mandatory injunction requiring the removal of the structure from the beach area and permanently enjoining the appellants from erecting any structures on the beach area in the future.

Appellants bring forward 18 points of error. Points 1 through 7 assert procedural errors by the trial court. Points 8 through 16 primarily challenge the findings of the jury and the judgment of the court as it relates to those findings. In the final two points of error (17 and 18), appellants argue that the Open Beaches Act itself and the effect of that Act on appellants are unconstitutional.

We will first examine the points of error raised by appellants in regard to claimed procedural errors. Point 1 raises the contention that the Small Business Administration (SBA), which held the mortgage on appellants' property, should have been joined under Rule 39, T.R.C.P., as an indispensable party. The appellants' argument is based on the premise that the SBA's interest in the property would be materially affected by the mandatory injunction to remove the building from the beach area and by the reduction of the property which secured the mortgage.

---

1. Tex.Rev.Civ.Stat.Ann. art. 5415d [recodified as Subtitle E, Chapter 61, Natural Resources Code (1978)].

Rule 39 was amended in 1971 to remove the classification distinctions which inhibited the overall purpose of the rule, that is, to bring before the court all parties who will be materially affected by the outcome. This revision and subsequent interpretation by the Supreme Court of Rule 39 has created the prevailing concept that a reduction of the number of parties classified as indispensable should be accomplished. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 204 (Tex.Sup.1974).

This current trend, however, does not affect the long-standing rule of law that the failure to join those who have traditionally been known as necessary or indispensable parties is fundamental error. *Petroleum Anchor Equipment, Inc. v. Tyra*, 406 S.W.2d 891 (Tex.Sup.1966); *United States of America v. Fleming*, 565 S.W.2d 87 (Tex.Civ.App.—El Paso 1978, no writ); *Jennings v. SRP*, 521 S.W.2d 326 (Tex.Civ. App.—Corpus Christi 1975, no writ). If the trial court fails to properly join an indispensable party, the reviewing court must take note of this lack of joinder and reverse and remand the case. *Jennings v. SRP*, supra at 331.

The Courts are thus faced with the dilemma of attempting to limit the number of parties classified as indispensable but must also constantly guard against the failure to designate a party as so integral to the judgment of the case that fundamental error is present if that party is not joined. The instant case is one that poses such a dilemma. In order to properly resolve this question, this Court must evaluate how non-joinder affects both the non-joinder party and the parties to the suit.

The SBA is the non-joined party in this suit. On one hand, it can be argued that the SBA's interest will not be materially affected by this law suit. There is sufficient collateral remaining in the form of the additional land secured by the Deed of Trust that the interest of the SBA will not be impaired or impeded. Rule 39(a)(2)(i). On the other hand, the total acreage of land which secured the mortgage is reduced by the judgment, leaving a smaller amount of collateral to sue upon in case of default by the appellants.

These arguments, as they relate to the land owned by appellants, are invalid in light of the holding of this Court. As we will point out later in this opinion, the beach in question never did belong to the appellants. The previous owners, under the holding of this case, dedicated the land to the general public. Therefore, appellants could never have used the beach area as collateral for the loan because it never belonged to them. The SBA loan is secured by only that property owned by appellants above the line of vegetation. The SBA need not be joined in this suit because its collateral is not being reduced by this suit.

As we previously mentioned, it is necessary to examine the effect of non-joinder from both sides, that of the non-joined party and the parties already in the suit. Appellants filed an original plea in abatement. It was their burden to show in that plea why any other party should be joined. *State v. Goodnight*, 70 Tex. 682, 11 S.W. 119, 120 (1888); *Sud v. Morris*, 492 S.W.2d 335 (Tex.Civ.App.—Beaumont 1973, no writ).

Although appellants were under order of the trial court from a docket control conference to join parties before November 1, 1977, they did not seek to join the SBA before that date but rather raised the issue in their plea in abatement filed on March 31, 1978. Also, the evidence submitted to the trial court as to the mortgage itself was limited to a deed of trust referring to the lien.

These failures to act in themselves may not be sufficient to defeat the appellants' point of error. At any rate, we will examine the provisions of Rule 39 to determine whether the appellants were damaged by the failure to join the SBA. Two questions are raised by Rule 39 which apply to appellants' point of error: 1) whether complete relief be accorded those already parties in the absence of the SBA [Rule 39(a)(1)]; 2) whether appellants would be subject to a substantial risk of incurring double, multi-

ple, or otherwise inconsistent obligations due to the absence of the SBA [Rule 39(a)(2)(ii)].

About the first question, we hold that complete relief could be and was accorded the parties. A permanent mandatory injunction was the result of the suit. It provides the people of the State of Texas with the use of the beach that was rightfully theirs. The injunction does not affect the lien held by the SBA. About the second question, the obligation of the appellants to the SBA is in no way increased or substantially impaired. Collateral for that obligation is the land owned by the appellants. Even if appellants depend on income from Kody's to repay the loan, they can still receive income from the lounge-motel. The judgment does not require destruction, only removal. Appellants can move the structure to their property behind the line of vegetation and they can continue to operate from that location. We find no fundamental error in the failure to join the SBA in the suit and point 1 is overruled.

Appellants also contend that the trial court made procedural errors in overruling their first motion for continuance (point 2), striking their first supplemental answer and amended counterclaim (point 3) and failing to grant a continuance afterwards (point 4), and sustaining plaintiff's motion in limine (point 5). All of these alleged errors relate directly or indirectly to the failure of the trial court to join the SBA. We have already pointed out in our discussion of point 1 that the SBA was not an indispensable party to the suit.

The motion for continuance was based on the argument that the appellants could not proceed without joinder of the SBA. We have held that the SBA was not an indispensable party to the suit, and joinder of the SBA was not required. Therefore, the motion for continuance was properly denied. Point of error 2 is overruled.

Appellants first supplemental answer and amended counterclaim apparently allege some form of wrong-doing by the Attorney General to tortiously interfere with the licensing procedures of the Liquor Control Board and the construction permit procedures of the City of Port Aransas. The trial court held that this counterclaim failed to state a cause of action. We agree. It is unclear what the appellants are seeking in their counterclaim even under a most liberal interpretation. Point of error 3 is overruled.

Appellants then argue that they should have been given time to amend their answer and counterclaim. There is nothing in the record which suggests appellants filed a second motion for continuance or that the court failed to grant leave to amend. Their failure to do so before trial amounts to waiver. Point of error 4 is overruled.

■ The motion in limine granted by the court prohibited the appellants from referring to the SBA loan, the cost of the building, the possibility of prescriptive easement against the State by the appellants, and the argument that the suit amounted to taking without compensation until the evidence could be presented to the court in a hearing outside the presence of the jury. We hold that there is nothing improper about any part of this motion. The appellants did not present the evidence to the court at the time of trial by separate hearing and a bill of exceptions. Therefore error cannot be correctly claimed here. *Ottis v. Haas,* 569 S.W.2d 508 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). Point 5 is overruled.

■ Appellants contend in points 6 and 7 that the trial judge should have submitted to the jury their definitions of "public beach" and "the beach in question." We do not agree. This action was brought under the Open Beaches Act, which sets out a definition for public beaches in § 1, Tex. Rev.Civ.Stat.Ann. art. 5415d. The trial judge correctly submitted this definition to the jury since it was the definition set out by statute. Points 6 and 7 are overruled.

■■ The crux of this appeal concerns challenges to the jury findings and the judgment as it relates to the Open Beaches Act. Points of error 8 through 18 challenge the Act in some form or another. Among

points 8 through 18 is one legal insufficiency point and several factual insufficiency points. About the legal insufficiency point, we shall view the evidence in a light most favorably to support the jury findings. *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex.Sup.1974). About the factual insufficiency points, we shall examine the whole record to determine whether the evidence supports the jury findings. *In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

In order to protect the public's right to open beaches, the Legislature passed the Open Beaches Act in 1959, which was later recodified in 1977, as we have noted on the first page of this opinion. Affirming the public policy of this State, the Act provides that the public has the free and unrestricted right of ingress and egress to, and the right of use and easement to and over, public beaches from the line of mean low tide to the line of vegetation. Furthermore, it prohibits the creation, erection, or construction of any "obstruction, barrier, or restraint of any nature which would interfere with the free and unrestricted right of the public" to use this area of the beach. Enforcement of this Act is accomplished by a suit for injunction brought by any one of a number of public legal representatives, the Attorney General of Texas included.

Under the Texas Open Beaches Act, there are three means by which the public can acquire a right of use or easement over the beach: prescription, dedication, or continuous right. Each of these means of acquisition has distinctive elements which must be established before the public can acquire such land by that particular means.

The first means by which the public can acquire a right of use or easement of the beaches under this Act is by prescription. It is clear that the Legislature intended for the statute to permit an easement by prescription by the general public.

■ An easement by prescription is obtained by meeting the requirements of adverse possession. *Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622 (1950); *City of Houston v. Church*, 554 S.W.2d 242, 245 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). The statute controlling adverse possession as it relates to this case is that found in Tex.Rev.Civ.Stat.Ann. art. 5510 (1958). A claimant must show that the use of the property was open, notorious, hostile, adverse, uninterrupted, exclusive, and continuous for a period of more than 10 years. *Davis v. Carriker*, 536 S.W.2d 246 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Hensz v. Linnstaedt*, 501 S.W.2d 463 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Dailey v. Alarid*, 486 S.W.2d 620 (Tex.Civ.App.—Tyler 1972, writ ref'd n.r.e.). The key to obtaining property under this statute has been recited many times: "The appropriation of the land must be of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *McDonnold v. Weinacht*, 465 S.W.2d 136 (Tex.1971); *Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925 (Tex.1948); *Chapa v. Garcia*, 513 S.W.2d 953 (Tex.Civ. App.—San Antonio 1974, writ ref'd n.r.e.). All of these elements must be proven or the claim is denied. *Maricle v. Hines*, 247 S.W.2d 611 (Tex.Civ.App.—Fort Worth 1952, no writ).

This Court has had the opportunity to address the subject of adverse possession on many occasions, but the most recent analysis by this Court is that found in *Rocha v. Campos*, 574 S.W.2d 233 (Tex.Civ.App.— Corpus Christi 1978, no writ). In that opinion the elements for compliance with article 5510 were specifically set out that claimant must affirmatively show: 1) possession of the land, 2) cultivation, use, or enjoyment thereof, 3) an adverse or hostile claim, 4) an inclusive dominion over the property and appropriation of it for his own use and benefit, 5) for the statutory period. *Rocha v. Campos*, supra at 236.

■ In our review of the evidence, we note that there are over 200 pages of testimony in the record from fisherman, ferryboat captains, law enforcement officials, long-time residents of the area, and others which support the jury's finding of public use of the beach. The public's use of the beach for many years was so open, visible

and notorious that the appellants must have recognized the people's right to the beach. For many years in excess of the 10 year statutory period, the general public used the beach as their own: hunting, fishing, swimming, boating, sunning, and effecting many more uses. Even public roadways were set up on the beach to help control the flow of people. See *Seaway Company v. Attorney General*, 375 S.W.2d 923 (Tex.Civ. App.—Houston 1964, writ ref'd n.r.e.). The evidence in the record supports the jury's verdict, both factually and legally, that the public had acquired a right of use and easement by prescription to or over the beach. Points 8 through 13 are overruled.

Even if the requirements of prescription are met, the appellants argue that the public is incapable of acquiring the easement by prescription. In their brief they cite many out-of-state cases holding that the unorganized public is incapable of acquiring land by prescription or by limitations. Appellee, on the other hand, submits a Texas case which suggests that the public is capable of acquiring title to land by prescription. *City of Dallas v. Etheridge*, 152 Tex. 9, 253 S.W.2d 640 (Tex.1952).

■ The general public in this State may acquire beaches by prescription if it can be established that the public has met all the requirements for adverse possession. In effect, the State holds the land in trust for use and benefit of all the people. This doctrine has been recognized by this State in public "ownership" of tidelands, riverbeds of navigable streams, and lake beds. *State v. Bradford*, 121 Tex. 515, 50 S.W.2d 1065 (1932). Therefore, we hold that the public may obtain the use of the beaches of this State by prescription. We overrule point of error 16.

Another means by which the public may acquire a right of use or easement to or over the beaches of Texas is by dedication. The concept of dedication is one that has been examined over and over again by the Courts of this State, producing a doctrine which has definitive elements.

■ Dedication may be accomplished by either an express grant or by implication. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978). Generally an express dedication is accomplished by deed or a written document. Implied dedication, on the other hand, requires a clear and unequivocal intention on the part of the landowner to appropriate the land to public use. *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878 (1960); *Greenway Parks Home Owners Ass'n v. City of Dallas*, 312 S.W.2d 235 (Tex.Sup.1958); *Aransas County v. Reif*, 532 S.W.2d 131 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Hudson v. Gaines*, 501 S.W.2d 734 (Tex.Civ.App.—Corpus Christi 1973, no writ).

■ Whether dedication is implied or expressed, there are four distinct elements that must be present. The person who makes the dedication must have the ability to do so, i. e., the landowner must have fee simple title before he can dedicate his property. Secondly, there must be a public purpose served by the dedication. Third, the person must make either an express or implied offer. And fourth, there must be an acceptance of that offer. See *Davis v. Carriker*, 536 S.W.2d 246 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.) and *Dinwiddie v. American Trading and Production Corp.*, 373 S.W.2d 867 (Tex.Civ.App.—El Paso 1963, no writ).

■ In this case, we do not have an express dedication of the beach by deed. *Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957 (1952). If a dedication has occurred in this case, it must be by implication. The theory of implied dedication finds its basis in the doctrine of equitable estoppel. *Dinwiddie v. American Trading and Production Corp.*, supra, at 869. A landowner is estopped from revoking the dedication or from using the dedicated land in any way which contradicts the original purpose for the dedication. *Seaway Company v. Attorney General*, supra, at 936.

■ Dedication by implication presumes an intent on the part of the landowner to give his property to the public. This

intent need not be explicit but can be implied by the grantor's conduct, open acts, or circumstances which embody the intent. *Viscardi v. Pajestka*, supra at 19; *Seaway Company v. Attorney General*, supra, at 936; *County of Calhoun v. Wilson*, 425 S.W.2d 846 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.); Elliott, Roads and Streets (2nd Ed.) Page 121. In this case, there is ample evidence to support the jury's finding that the prior owner had the intent to dedicate the property. The mere fact that the prior owner stood by and watched the public use "his" beach for many years indicates that he intended to give the beachfront to the public. As the Houston Court stated in *Seaway*, "(t)he act of throwing open property to the public use, without any other formality, is sufficient to establish the fact of dedication to the public." *Seaway Company v. Attorney General*, supra at 936.

The final step of accomplishing dedication is that there must be an acceptance of the dedication. This acceptance does not require a formal or express act. By general and customary use, the public can accept a dedication. *Viscardi v. Pajestka*, supra at 19; *Davis v. Carriker*, supra at 252. Certainly the people of Texas made sufficient use of the beach by swimming, fishing, and engaging in other activities to constitute an acceptance of that property. Appellants cannot contend that the general public is using "their" land because the prior owner or owners had dedicated the beach to the general public before appellants even acquired the property. We hold that there is sufficient evidence to support the jury's findings regarding dedication. Point 14 is overruled.

The last means by which the public can acquire a right of use or easement to or over the beaches according to the Open Beaches Act is "by virtue of continuous right in the public." In effect, the Legislature of this State has recognized the common law doctrine of custom and usage as a means for acquiring the beaches of Texas for the general public.

In the foregoing discussion we have determined that the trial court's judgment can be affirmed on either the theory of prescription or dedication. And we will not discuss the theory of custom other than to say that we recognize the doctrine and that the jury's findings in that regard are supported by sufficient evidence.

In their point 15, the appellants complain that the judgment fails to describe with reasonable certainty the exact limits of the easement claimed for the public. The beach does have definite boundaries which can be determined exactly. On one boundary the public beach is determined by the line of mean low tide, while the landward side is marked by the line of vegetation. Although these boundaries do tend to shift occasionally, they can be determined at any given point of time. The rule has been established that easements may shift from time to time, just as navigable rivers may change course by avulsion. Furthermore, there is considerable testimony in the record which establishes the stability of the beach in question. See *Seaway Company v. Attorney General*, supra at page 939. Point 15 is overruled.

In point of error 17, appellant raises the well established rule of law that a state cannot revoke or impeach its own grants or patents. We agree with this proposition. This point has no applicability to this case, however. The holding in this case does not presume revocation or impeachment of grants and patents but rather the acquisition of private property by the general public after complying with the requirements for establishing prescription, dedication, and/or custom. In no way does this holding revoke or impeach the original issuance of the patents or grants by the State of Texas. Point 17 is overruled.

The final contention of the appellants asserts in point 18 that the Open Beaches Act is unconstitutional as it applies to them. The Act, according to the appellants, is unconstitutional because it impairs the obligation of contracts, it is a taking of property without compensation, and finally, it is an ex post facto law.

The first two of these three challenges were raised in *Seaway* at page 930, but the Supreme Court, in finding no reversible error in that case, resolved these two contentions. The assertion that the Act is an ex post facto law, however, is a new challenge, but this challenge cannot be sustained either. First, this Act is not one that is criminal in nature. Secondly, the Act does not apply retroactively. It is based on the acquisition of property by either prescription, dedication, or custom, three doctrines which have long been recognized by this State. Furthermore, the structure in question here was erected in 1971. The Act was enacted in 1959. Appellants' point 18 is overruled.

All points of error have been considered carefully by us and they are overruled. The judgment of the trial court is affirmed.