Harvey LINDNER, et ux., Appellants,

v.

Frank Y. HILL, Jr., et al., Appellees.

No. 04–83–00328–CV.

Court of Appeals of Texas, San Antonio.

April 25, 1984.

Rehearing Denied May 21, 1984.

Chilton Maverick, San Antonio, for appellants.

Frank Y. Hill, Boerne, for appellees.

Before BUTTS, REEVES, TIJERINA, JJ.

## OPINION

BUTTS, Justice.

Plaintiffs appeal from a judgment declaring that Lindner Road is a public road under the doctrine of implied dedication. Plaintiffs Harvey Lindner and his wife Ruth are the present owners of the 1,528 acre ranch through which Lindner Road passes in an east-west direction for a distance of 1.3 miles. During the trial, plaintiffs, Harvey and Ruth, without objection, amended their petition to include their sons, Mark and Steven, as plaintiffs. Defendants are Frank Y. Hill, Jr., county attorney of Kendall County, William R. Whitworth, Kendall county judge, and members of the Kendall County Commissioner's court. We affirm.

Herman Lindner, Harvey's grandfather, first built Lindner Road and constructed Holiday School (at the intersection of Lind-

ner and Holiday roads) in the late nineteenth century with the help of some neighbors. The record does not indicate when Herman died. At his death, however, his son, Hubert Lindner, Harvey's father, owned the ranch until his death in 1947. Hubert died intestate and his three heirs were his wife Emmie, his son Harvey, and his daughter Odedda Murff. Harvey purchased his sister's undivided one-fourth interest in 1961, executing a $5,000.00 vendor's lien note. At Emmie's death in 1970, she bequeathed Harvey a life estate in the ranch, remainder to her grandsons, Mark and Steven.[1] Together, the plaintiffs in this suit have the only property interest in the ranch where the road is located.

New subdivisions have sprung up in the area and Harvey testified that he has recently experienced problems with garbage dumped at the side of the road and hunting from the road. Plaintiffs closed Lindner Road by locking its four gates in June of 1982. These gates had been closed from time to time, but they had never been locked. In August 1982, Frank Hill, county attorney, wrote a letter to Harvey threatening criminal action unless the gates to Lindner Road, which he stated was a public road, were unlocked. Harvey unlocked the gates, but took legal action by alternatively pleading for (1) a declaratory judgment that Lindner Road is a private road, (2) injunctive relief to prevent the Commissioner's Court from interfering with plaintiffs' sole use of the roadway, and (3) quieting of plaintiffs' title to Lindner Road.

Trial was before the court without a jury. The trial court filed findings of fact and conclusions of law:

**1.** The Lindner family tree may be of use:

## 1. FINDINGS OF FACT

A. The road in controversy, referred to as "Lindner Road," traverses Plaintiffs' property in a generally East-West direction a distance of 1.3 miles. To the east of Plaintiffs' property, it intersects "Holiday Road," which is admittedly a county road and which leads to the Town of Comfort. To the west of Plaintiffs' property, it intersects a road referred to as "Herman Sons Road" or "Mill-Dam Road," which is admittedly a county road and which leads to and intersects with a county road designated "Skyline Drive", and State Highway No. 27.

B. "Lindner Road" was established by Plaintiffs' predecessor in title, Herman Lindner, in the late 1880's or early 1890's to provide access by the residents of the community to "Holiday Road" and Holiday School, which was located for approximately 60 years near the intersection of "Lindner Road" and "Holiday Road," and has been open to and used by the public from the east and west of Plaintiffs' property since the 1930's.

C. Although never fenced, "Lindner Road" is clearly defined and there is no evidence of any change in its location, width or course since being established.

D. Gates have existed across "Lindner Road" since 1949, at the latest, with the consent and acquiescence of Plaintiffs, and prior to that time, it was maintained by residents of the community.

E. Kendall County has repaired and maintained "Lindner Road" since 1949, at the latest, with the consent and acquiescence of Plaintiffs, and prior to that time, it was maintained by residents of the community.

F. "Lindner Road" has been open to and used by the public generally since the early 1900's without interruption and without obtaining permission. When there is flooding on other roads in the

area, "Lindner Road" provides the only access for some members of the public to the Herman Sons Home and Camp, and the Baptist Camp.

G. Plaintiffs and their predecessors in title have used "Lindner Road" in common with the public.

H. In the late 1960's, a county road know [sic] as "Skyline Drive" was established which intersects "Holiday Road" approximately 2.5 miles north of Plaintiffs' Property. "Skyline Drive" is narrow and poorly maintained, has steep grades, becomes impassable in wet weather and is hazardous for use by school buses and emergency vehicles.

I. On October 10, 1949, the Commissioner's Court of Kendall County entered an Order, of record in Volume 7, Page 184, Commissioners' Court Minutes of Kendall County, purporting to establish "Lindner Road" as a third-class county road. Neither Plaintiffs nor their predecessors in title applied to the Commissioners' Court for such action. Although Plaintiff Harvey Lindner owned an undivided interest in the property upon which the road is located, he was given no notice of the application or of any proceedings of the Commissioners' Court in regard thereto, and he received no compensation for the taking of the road. Plaintiff Harvey Lindner had no actual knowledge of the Commissioners' Court Order until August, 1982.

## II. CONCLUSIONS OF LAW

A. The Commissioners' Court Order of October 10, 1949, purporting to establish the road as a third-class county road is void for want of jurisdiction as to Plaintiff Harvey Lindner because said Plaintiff was given no notice of the proceedings incident thereto.

B. Because Plaintiffs and their predecessors in title used the road in common with members of the public, the use of the road by the public was permissive and not adverse, as a matter of law, and no public easement by prescription matured.

C. For the following reasons, the road is impliedly dedicated to public use.

1. For a period of at least 50 years, Plaintiffs and their predecessors in title threw open the road to public use.

2. For a period of at least 50 years, the road has been used by the public without interruption and not by mere permission.

3. The road has the reputation of being a public road.

4. The road has been maintained by the County with the consent and acquiescence of Plaintiffs for a period of more than 30 years.

5. The public will be injured if the road is closed.

6. The use of the road has not been limited to a particular class of persons.

7. The appropriation of the road to the public has been accepted by public use thereof.

8. Plaintiffs and their predecessors in title kept the gates unlocked for approximately 40 years.

D. Article 6812h, V.A.C.S., should not be given retrospective application because, to do so, would destroy a vested substantive right of the public. [Citations omitted].

When findings of fact and conclusions of law are filed in conjunction with a statement of facts these findings will be sustained if there is any evidence to support them. *Gulf Freeway Lumber Co. v. Houston Investment Realty Trust*, 452 S.W.2d 39, 43 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ); 4 R. McDONALD, TEXAS CIVIL PRACTICE § 16.10 (rev.1971). Such findings are equivalent to a jury verdict on special issues, and should not be disturbed upon appeal if they are supported by competent evidence, unless they appear to be against the preponderance of the evidence. *Houston Natural Gas Corp. v. Pearce*, 311 S.W.2d 899, 903 (Tex. Civ.App.—Houston 1958, writ ref'd n.r.e.); R. McDONALD, *supra* at § 16.05.

Plaintiffs raise ten points of error. In points of error one through eight, plaintiffs

specifically challenge the trial court's findings of fact and conclusions of law. Since the trial judge ruled out prescriptive easement (Findings of Fact F and G) in his findings and appellees do not raise this as a cross-point on appeal, we decline to discuss it. Rather, we focus our attention on the legal and factual sufficiency of the evidence to sustain the judgment that Lindner Road was impliedly dedicated.

■ Defendants correctly note that many of the points of error attacking the findings of fact do not assail the evidence as failing to support those findings. However, in the interest of clarity regarding the requirements of dedication and because two assignments do question the evidence, we will address the arguments as if they all assert insufficiency of the evidence. We will look at the legal and factual sufficiency to support the trial court's findings of fact. In the tenth point of error, plaintiffs contend that the doctrine of implied dedication permits a taking without compensation. Since this last argument is raised for the first time on appeal, we do not discuss it. *Wright v. Allstate Insurance Co.*, 285 S.W.2d 376, 380 (Tex.Civ. App.—Dallas 1955, writ ref'd n.r.e.) (on Motion for Rehearing).

■ In point of error nine plaintiffs argue the implied dedication is barred. TEX.REV.CIV.STAT.ANN. art. 6812h (Vernon Supp.1984) provides:

Art. 6812h. Private roads; acquisition of public interest in counties of 50,000 or less

#### Definition

Section 1. In this Act, "dedication" means the explicit, written communication to the commissioners court of the county in which the land is located of a voluntary grant of the use of a private road for public purposes.

#### Public interest

Sec. 2. (a) A county may not establish, acquire, or receive any public interest in a private road except under the following circumstances: (1) purchase; (2) condemnation; (3) dedication; or (4) adverse possession.

(b) Once a public interest has been established in accordance with Subsection (a) of this section, the interest must be recorded in the records of the commissioners court of the county in which the road is located.

#### Contest

Sec. 3. Any person asserting any right, title, or interest in a private road in which a public interest has been asserted in accordance with Section 2 of this Act may file suit in a district court in the county in which the road is located within two years after the notation in the records of the commissioners court of the public interest in the road.

#### Verbal dedication

Sec. 4. For the purposes of this Act, neither verbal dedication nor intent to dedicate by overt act is sufficient to establish a public interest in a private road.

#### Public use; maintenance

Sec. 5. For the purposes of this Act, neither the use of a private road by the public with the permission of the owner nor the maintenance with public funds of a private road in which no public interest has been recorded as provided by Section 2 of this Act is sufficient to establish adverse possession.

Effect on counties with population greater than 50,000

Sec. 6. This Act shall have no effect on counties with population greater than 50,000 according to the last preceding federal census.

The legislature adopted this statute in 1981. Since Kendall County has a population of 10,635 according to the 1980 Federal Census, the statute applies prospectively, but we find that it does not apply retrospectively. The Texas Constitution itself prohibits the effectuation of retrospective laws insofar as such laws affect substantive rights. TEX.CONST. art. I, § 16; *Lot-*

to v. State, 208 S.W. 563, 564 (Tex.Civ.App.—San Antonio 1919, no writ). Since the doctrine of implied dedication establishes a substantive right, this statute cannot be retroactively applied to abolish such a right arising before enactment of the statute in 1981. Point of error nine is overruled.

Where no statute is applicable, common law controls. *United States Casualty v. Rice*, 18 S.W.2d 760, 761 (Tex.Civ.App.—Dallas 1929, writ ref'd). Under the common law, an owner of private property could either expressly or impliedly make known his intention to dedicate. *Moody v. White*, 593 S.W.2d 372, 378 (Tex.Civ.App.—Corpus Christi 1979, no writ).

Express dedication is achieved by deed or written document, *Moody, supra* at 378; *Henderson v. Frio City*, 362 S.W.2d 406, 409 (Tex.Civ.App.—San Antonio 1962, no writ), whereas implied dedication requires a clear and unequivocal intention on the part of the landowners to appropriate the land to public use. *Moody, supra* at 378; *Henderson, supra* at 409.

We find no evidence of express dedication. On October 10, 1949, the Commissioner's Court of Kendall County declared Lindner Road to be a third class county road at the behest of Gus Lindner, Hubert's brother and Harvey's uncle. Gus did not own the property. Appellees do not challenge the trial court's finding that this order was a void order because the proper owners of the property were not served. *Cooke County v. Dudenhaffer*, 196 S.W. 976 (Tex.Civ.App.—Fort Worth 1917, no writ). Harvey testified that he never knew his uncle had attempted to dedicate the road until the county attorney demanded he reopen its locked gates in August, 1982.

Unlike express dedication, the theory of implied dedication is based on the doctrine of equitable estoppel. A land owner is estopped from revoking an implied dedication or from using the dedicated land in any way which contradicts the original purpose for the dedication. *Moody, supra* at 378; *Dinwiddie v. American Trading and Production Corp.*, 373

S.W.2d 867, 869 (Tex.Civ.App.—El Paso 1963, no writ). Implied dedication is a question of fact. *Malone v. Whitfield*, 621 S.W.2d 192, 195 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.).

There are four distinct elements to establish dedication, whether express or implied: (1) the person making the dedication must have the ability to do so; he must have fee simple title before he can dedicate his property; (2) there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer. *Spinuzzi v. Town of Corinth and Anderson*, 665 S.W.2d 530 (Tex.App.—Fort Worth, 1983, no writ); *Moody v. White, supra* at 378.

The question is whether the four requirements are shown by sufficient evidence supporting the judgment based on implied dedication. The first requirement is that the person making the dedication must have the ability to do so. Therefore we must determine when this dedication took place, if it did, and who made it. We find that Herman Lindner, Harvey's grandfather and predecessor in title, dedicated Lindner Road. He built both the road and Holiday School with the help of neighbors. Lindner Road was the only way that Holiday School could be reached. Harvey himself testified that the public was never precluded from using Lindner Road until the gates were locked in July, 1982. Herman Below, also a grandson of Herman Lindner, testified the public had used Lindner Road since 1920. Percy Lindner, a cousin, testified the public had used Lindner Road since 1917.

In addition to ample and uncontradicted evidence of public use, there is also evidence of public maintenance. Herman Below testified that Kendall County crews maintained the road since 1913. Percy Lindner testified the County maintained the road since 1940. However, Harvey testified Hubert was averse to having the county maintain the road, but that after Hubert's death he gave the county permis-

sion to maintain the road in 1949 through his Uncle Gus.

We find the evidence shows that Lindner Road was thrown open to public use by the owner, Herman Lindner, and his successors in interest continued public use. The cases differ whether such an act without any other formality is sufficient to establish the fact of a dedication to the public. *Compare O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 882 (1960) (such an act sufficient) with *Lee v. Uvalde County,* 616 S.W.2d 367, 372 (Tex.Civ.App.—Tyler 1981, no writ) (act not sufficient). Because there is also evidence of public maintenance of the roads, as we have noted, we need not determine whether throwing the road open to public use is in itself sufficient to establish implied dedication. It is clear there was active consent given to the county in 1949, rather than mere acquiescence. *See Lee, supra* at 372.

The second requirement for implied dedication is that a public purpose be served. The evidence indicates that when there are heavy rains Lindner Road provides the only safe means of ingress and egress from the area, although there is another dedicated county road (Skyline Drive) which can be used safely when the weather is good.

The third requirement for implied dedication is that a person capable of making an offer must make an offer to dedicate. The Lindner family allowed the public to use the road unrestrictedly for at least 50 years (and probably more) until August 1982. The county maintained the road at the behest of Harvey at least from 1949 to the present.

The fourth requirement for implied dedication is that there be an acceptance of the offer to impliedly dedicate. The inhabitants of Kendall County through their use and the county through its maintenance have clearly evinced a desire to consider Lindner Road a county road. The county's demand to reopen Lindner Road is also a manifestation of acceptance.

■ Harvey, Ruth, Steven and Mark are estopped from denying the intention of their predecessors in title to dedicate Lindner Road. The findings of fact are supported by the evidence, and they, in turn, support the judgment. Since we find there is sufficient evidence, both legally and factually, of all of the elements of implied dedication as reflected in the findings of fact, we overrule points of error one through eight and affirm the judgment.

TIJERINA, Justice, dissenting.

I respectfully dissent.

This is an appeal from a declaratory judgment declaring that "Lindner Road," situated on appellants' property in Kendall County, was a public road. The judgment rendered by the trial court, without a jury, was predicated on the common law doctrine of "implied dedication." The roadway in question was built by appellants' predecessor in title with the help of neighbors and passes through appellants' property a distance of 1.3 miles. The roadway intersects with other county roads; namely, Holiday Road on the east and Herman Sons Road on the west and eventually connects with Skyline Drive, a new dedicated public roadway *built to serve the same area. The four gates across Lindner Road were kept closed* but not locked until the summer of 1982 when the issue was raised upon appellant locking the gates. *The roadway has been maintained by the county with permission by appellants.* On October 10, 1949, the Commissioners' Court of Kendall County declared Lindner Road to be a public county road; however, the trial court declared the "Order" to be void and of no force and effect since the action taken was without notice to appellants.

Appellants' first eight points of error challenge the correctness of the findings of fact and conclusions of law. Specifically we were asked to determine whether the record evidence supports the finding of an implied dedication of Lindner Road as a public road. The essential elements of a common law implied dedication are: (1) a person competent to dedicate; (2) a public purpose that will be served by the dedication; (3) an offer or tender of dedication; and (4) an acceptance of the offer or

tender. *Dinwiddie v. American Trading and Production Corp.*, 373 S.W.2d 867, 869 (Tex.Civ.App.—El Paso 1963, no writ). In *City of Houston v. Scanlan*, 120 Tex. 264, 37 S.W.2d 718, 720 (1931), the Supreme Court addressed this question, saying:

"The vital principal, ..., upon which the doctrine of dedication rests, is *the intention of the owner to dedicate.* This intention may be implied from the owner's acts, coupled with the intention with which he acts. *But the intention to dedicate must be shown or inferable, by sufficient evidence, from the owner's acts.*" [Emphasis added.] [Citations omitted.]

Implied dedication is founded upon equitable estoppel based on the owner's action or inaction. *Dinwiddie v. American Trading and Production Corp.*, supra at 869. The establishment of facts constituting dedication cannot be left to conjecture and when the asserted dedication rests in estoppel, the evidence should clearly and satisfactorily establish the necessary facts. *See Lee v. Uvalde County*, 616 S.W.2d 367, 372 (Tex.Civ.App.—Tyler 1981, no writ); *Henderson v. Frio County*, 362 S.W.2d 406, 409 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.). Maintenance of the road by the county, with the owner's consent cannot be considered as clear and unequivocal acts on the owner's part as to estop them from denying their intention to dedicate the road in question. *Lee v. Uvalde County*, supra at 372.

It is undisputed that the road in question is situated on appellants' property. A public school named the Holiday School was built on the property and existed for many years with appellants' consent. The school was later closed and *the land and school reverted back to appellants.* The evidence presented by appellee in support of the claim of implied dedication was restricted to the testimony of past county commissioners and neighboring landowners testifying to factual conclusions. The record reflects that any designation of Lindner Road as a public road was by virtue of the 1949 void order of the county commission-

ers and not by implied dedication. The record evidence does reflect that *Skyline Road, a more recently built dedicated county road serves the general area.* The witnesses stated that Skyline Road was hazardous during bad weather and only on those occasions was Lindner Road used. It was clearly established that *travel on the road in question was limited to area landowners.* We are not persuaded by the fact that the county maintained the road with appellants' consent since such evidence is not sufficient to show that appellants' consent amounted to an intent to dedicate the road to the public. *See Lee v. Uvalde County*, supra at 372. I am unable to find in this record proof of any acts or omissions on appellants' part which would tend to show an intention to dedicate the road to public use. *Appellants' testimony that he gave a license or permission to the area landowner to use the road was unrebutted.* As in *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 883 (1960), there is no evidence to show that the public generally or customarily used the road.

The common law doctrine of implied dedication has been abolished by TEX.REV. CIV.STAT.ANN. art. 6812h (Vernon Supp. 1984). The suit was filed after the effective date of article 6812h and retroactivity of the statute is not in issue in view of my ruling that there never was an implied dedication of the subject roadway. My conclusion is that the evidence is factually and legally insufficient to support the trial court's findings and judgment. Therefore, I would reverse the judgment and the cause rendered.