Harry ARMSTRONG, Appellant,

v.

SOUTHERN STATE BANK OF SOUTH HOUSTON, Appellee.

No. 15315.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 13, 1968.

William B. Dazey, Houston, for appellant.

Raymond M. Hill, John N. Pollard, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover the face amount of two cashier's checks issued by defendant. After a trial to the court without a jury, judgment was entered for the defendant. Pursuant to a proper request, findings of fact and conclusions of law were filed.

The findings of fact and conclusions of law follow:

### Findings of Fact

"(1) On or about February 12, 1965, in exchange for a valuable consideration, the Defendant Southern State Bank exe-

cuted and issued to Marjory L. Lockhart, two cashier's checks. These cashier's checks were drawn on the Defendant Bank and payable to the order of Marjory L. Lockhart. Said cashier's checks were number 055338 in the amount of Three Hundred and No/100 ($300.00) Dollars, and number 055339 in the amount of One Hundred and No/100 ($100.00) Dollars.

"(2) On or about February 13, 1965, in New Orleans, Louisiana, the Plaintiff Harry Armstrong paid $100.00 in cash funds to a person calling himself Curtis L. Lockhart, and received from such person Defendant's check number 055339 which said person endorsed. Said check contained the purported signature of 'Marjory L. Lockhart' above that of said Curtis L. Lockhart. The Plaintiff endorsed said check and delivered the same to W. D. Dennis in New Orleans, receiving $100.00 in cash funds from said W. D. Dennis. W. D. Dennis endorsed and delivered said check to the National Bank of Commerce in New Orleans, Louisiana, receiving in return $100.00 cash funds from the bank. From recitations stamped upon the check and testimony given on trial, I find that on February 15, 1965, the National Bank of Commerce in New Orleans stamped said check 'Through New Orleans Clearing House or Pay to the Order of Any Bank, Banker or Trust Co., All Prior Endorsements Guaranteed' and put said check in Federal Reserve banking channels for collection. The check came to the Houston branch of the Federal Reserve and by customary procedure was presented to the Defendant Bank for payment. The defendant forwarded sufficient funds to the Federal Reserve Collecting system to pay said check and thereupon stamped 'Paid, Feb. 19, 1965, Southern State Bank, South Houston, Texas' on the face of said check, and Defendant withdrew said funds from the reserve account established to pay said check when originally executed and delivered to Marjory L.

Lockhart. From the testimony of the Plaintiff, I find that such funds were paid to or for the account of the Plaintiff.

"(3) On or about February 15, 1965, the Plaintiff paid $300.00 cash to the man calling himself Curtis L. Lockhart and received from this man the Defendant's cashier's check number 055338, containing the following signatures, to-wit: 'Curtis L. Lockhart, Marjory L. Lockhart.' The Plaintiff endorsed and delivered said check to the National Bank of Commerce in New Orleans and received $300.00 cash funds from said bank. From recitations stamped on the check and testimony given on trial, I find that said bank stamped said check 'Through New Orleans Clearing House or Pay to the Order of any Bank, Banker or Trust Co., All Prior Endorsements Guaranteed,' and put said check in Federal Reserve banking channels for collection. The check came to the Houston branch of the Federal Reserve and by customary procedure was presented to the Defendant Bank for payment. The Defendant forwarded sufficient funds to the Federal Reserve collecting system to pay said check and thereupon stamped 'Paid, Feb. 19, 1965, Southern State Bank, South Houston, Texas' on the face of said check, and Defendant withdrew said funds from the reserve account established to pay said check when originally executed and delivered to Marjory L. Lockhart. From the testimony of the Plaintiff, I find that such funds were paid to or for the account of the Plaintiff.

"(4) On February 24, 1965, a substantial period of time after the payment of said cashier's checks as set forth above, Marjory L. Lockhart ented the Defendant Bank and declared that cashier's checks numbered 055338 and 055339 had been stolen from her and that the signatures on said checks paid by the Defendant Bank were forgeries. She thereupon signed two Forged Signature Affidavits

with regard to said cashier's checks and requested the Defendant Bank to forward said Affidavits through banking channels. Pursuant to this request by Marjory L. Lockhart, the Defendant forwarded these affidavits with the two cashier's checks attached to the Federal Reserve Branch Bank in Houston. Ultimately, the affidavits were presented to the National Bank of Commerce in New Orleans, and upon receipt of the Affidavits and cancelled cashier's checks, the New Orleans bank sent $400.00 to Marjory L. Lockhart through the same banking channels that had been used to originally pay the checks. As a link in this chain of payment, the Southern State Bank received such funds from the Federal Reserve Branch Bank and immediately turned over such funds to Marjory L. Lockhart. The Defendant Bank in no way profited from any of the above transactions.

"(5) The Defendant Bank acted with total impartiality in forwarding the two Forged Signature Affidavits through banking channels at the request of Marjory L. Lockhart. It did not know, and had no means of knowing, what action would be taken by the National Bank of Commerce in New Orleans or any other prior endorser upon receipt of the Affidavits. The Defendant Bank had no connection with or control over any of such parties. The Defendant Bank was acting merely as a conduit in forwarding the Affidavits through banking channels. If the Plaintiff or the National Bank of Commerce in New Orleans had elected to stand on the strength of the endorsements and had sent back the cashier's checks instead of funds, the Defendant Bank would have merely forwarded the same to Marjory L. Lockhart in the same manner as it forwarded the funds that were in fact returned to Mrs. Lockhart.

"(6) Every action of the Defendant Bank put in issue by this lawsuit was taken with at least that degree of care which would have ordinarily been exercised by any prudent banking institution acting under the same or similar circumstances. All such actions were undertaken in good faith and without negligence on the part of the Defendant Bank.

## Conclusions of Law

"(1) The two cashier's checks made the basis of this suit were presented to the Defendant Bank and were paid by the Defendant. When the funds reached the National Bank of Commerce in New Orleans which had presented the checks for payment, the provisions of Art. 5939, V.A.C.S., then in force, operated to discharge the instruments by such payment in due course.

"(2) There is nothing in the pleadings or evidence adduced at trial which would charge the Defendant Bank with responsibility for any payment made by the Plaintiff, whether by mistake or otherwise, to a bank in New Orleans with which the Defendant Bank had no connection or control.

"(3) There is nothing in the pleadings or evidence adduced at trial giving rise to any cause of action against the Defendant for any type of tortious conduct. The Defendant acted in good faith and without negligence. Its action in forwarding the Affidavits of Marjory L. Lockhart through banking channels was the usual and customary banking practice under such circumstances, and constituted no tortious conduct.

"(4) The question of payment of the two cashier's checks was put into issue by Paragraph V of Plaintiff's Second Amended Petition, which issue was joined by the statement in Paragraph I of the Defendant's Original Answer which states 'Such Bank denied Plaintiff's allegations that such obligations were not honored.' As set forth above, this issue is found in favor of the Defendant.

"No other allegations or adduced evidence have established a cause of action

against the Defendant, therefore, it is entitled to Judgment."

■ The trial court properly held that these cashier's checks were discharged under the provisions of Sec. 119, Art. 5939, V.A.C.S., which reads, in part:

"Sec. 119. A negotiable instrument is discharged:

1. By payment in due course by or on behalf of the principal debtor;

2. * * *;

3. By the intentional cancellation thereof by the holder;

4. * * *;

5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

■ The evidence supports the trial court's findings of fact that the cashier's checks were presented to the defendant bank through normal banking channels and were duly paid, and that the bank stamped both checks "paid" and filed them away.

■ Appellant objected to all evidence of payment presented at the trial, including the "paid" stamp appearing on the face of the two checks, for the reason that the bank did not affirmatively plead payment. Appellant, however, sued on the instruments, which were stamped "paid", and attached copies of the checks to his pleadings. He alleged that he was the lawful owner and holder of the checks and that the bank had failed and refused to pay them. The bank specially denied the allegation that the checks were not honored and pleaded a general denial. The pleadings were sufficient to raise the issue of payment. Maryland Casualty Co. v. Hudgins, 97 Tex. 124, 76 S.W. 745 (1903); Raney v. White, 267 S.W.2d 199 (San Antonio Tex.Civ.App. 1954, writ ref.); Herrin Transportation Co. v. Parker, 425 S.W.2d 876 (Houston Tex. Civ.App., First Dist. 1968, ref., n. r. e.).

Article 5939, Sec. 123, V.A.C.S., provided:

"A cancellation made unintentionally, or under mistake or without the authority of the holder, is inoperative; but where an instrument or any signature thereon appears to have been cancelled the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake without authority."

Appellant has failed to sustain the burden of proving any grounds which would render the cancellation of these checks inoperative. No cause of action can be sustained based on the premise that the checks are viable instruments. The findings of payment made by the court are required by the evidence.

■ The fact that the cancelled checks, together with affidavits that the payee's endorsement was forged, were placed in the usual banking channels by appellee at the request of, and for the benefit of, the payee, does not constitute the reissuance of the checks.

While appellant contends that he paid the New Orleans bank by reason of a mistake of fact, appellee had no knowledge of any mistake when it received the money and forwarded it to Mrs. Lockhart, the original payee. It is true that Mrs. Lockhart paid appellee a note with part of the money received by appellee from the New Orleans bank, but we do not consider that by reason of this fact appellee has been unjustly enriched. The elements of a cause of action based on mistake have not been proven. Central National Bank of Houston v. Martin, 396 S.W.2d 218 (Houston Tex.Civ.App., First Dist. 1965), dism.

Appellant has failed to secure findings by the trial court establishing a cause of action against appellee. We are unable to see any such cause of action established by uncontroverted evidence, or as a matter

of law. The material findings of fact made by the trial court are supported by the evidence. The judgment of the Trial Court must be affirmed.