**VILLA NOVA RESORT,
INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–85–445–CV.**

Court of Appeals of Texas,
Corpus Christi.

May 22, 1986.

Robert Whittington, Brownsville, for appellant.

Jim Mattox, Ginny Agnew, Atty. Gen's Office, Austin, for appellee.

Before UTTER, BENAVIDES and DORSEY, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a declaratory judgment action tried before the court. Villa Nova Resort, Inc., sought a declaration of its rights under the Texas Open Beaches Act (the Act)[1] in a certain portion of land extending approximately sixty-five feet seaward of its existing seawall. The trial court found that the public has acquired a right of access to, and use of, as well as an easement over, the area in question by prescription, dedication and continuous use. We affirm the judgment of the trial court.

Villa Nova Resort, Inc. (Villa Nova) is the owner of a certain tract of land in South Padre Island, Texas, bordering on the Gulf of Mexico. Apparently, Villa Nova requested a building permit in order to construct additional buildings on the area (shaded portion of the diagram).

1. TEX.NAT.RES.CODE ANN. §§ 61.011-.253 (Vernon 1978 & Supp.1986). All statutory citations are to the TEX.NAT.RES.CODE ANN. unless otherwise noted.

It appears that the city declined to issue a building permit without an opinion letter from the Attorney General stating that such construction was permissible. Villa

Nova contended that the Attorney General refused to issue an opinion letter which would allow the construction. This suit was instituted by Villa Nova to determine its rights in the area.

Although not brought as a cross-point of error, the State argues, in its statement of the case, that we should not consider a letter in which the trial court set out its "Findings of Fact and Conclusions of Law," included in the record by supplemental transcript. The State contends that "the letter does not substitute for Findings of Fact and Conclusions of Law prepared in accordance with Rules 296–299 TEX.R.CIV. P." We disagree.

Both parties requested that the trial court enter Findings of Fact and Conclusions of Law, and each party submitted proposed forms. Prior to the entry of the judgment, the trial court sent a letter to both parties dated March 27, 1985, stating, "[a]fter considerable review of the pleadings, exhibits, depositions and testimony of the witnesses, the Court makes the following Findings of Fact and Conclusions of Law[.]" The court went on to list its findings and conclusions. On May 10, 1985, a hearing was held on the State's motion for judgment, at which time the court and the parties discussed the language to be used in the court's judgment. At this hearing, the State asked the court to clarify certain of the court's Conclusions of Law, discussed at least one of the court's Findings of Fact, and pointed out one typographical error in the court's findings and conclusions and requested that it be corrected. Furthermore, Villa Nova's counsel stated, "I presume that these [Findings of Fact and Conclusions of Law] will be the ones that will be part of the record for purposes of appeal." Although the record does not reflect that the court made an oral response to this statement, the record also reveals that the State failed to raise *any* objection to the trial court's Findings of Fact and Conclusions of Law.

■ As Villa Nova points out, Findings of Fact and Conclusions of Law need not be in any particular form other than

that they must be in writing, Rule 296, and be "filed with the Clerk and shall be part of the record." TEX.R.CIV.P. 297. The fact that the Findings of Fact and Conclusions of Law were contained in a letter does not affect their validity, as long as they are filed with the Clerk and become a part of the record. The trial court's letter was included in the appellate record by supplemental transcript, wherein the clerk of the trial court swore that the letter is "as same appeared from the originals now on file and of record in this office." Any error committed by the trial court in filing Findings of Fact and Conclusions of Law prior to the entry of judgment was harmless. Consequently, the Findings of Fact and Conclusions of Law are before us for review.

The Act provides that:

the public, individually and collectively, shall have the free and unrestricted right of ingress and egress to and from the state-owned beaches bordering on the seaward shore of the Gulf of Mexico, or if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public, the public shall have the free and unrestricted right of ingress and egress to the *larger area* extending from the line of mean low tide to the line of vegetation bordering on the Gulf of Mexico. [emphasis ours]

§ 61.011 (Vernon 1978); *see also* § 61.012. The State claims that this "larger area" encompasses the area in question and has become "public beach" by prescription, dedication or continuous right in the public.

By its first point of error, Villa Nova contends that it was error to allow the State to introduce evidence of prescription or dedication because they constitute matters of avoidance or affirmative defenses and should have been affirmatively pled by the State. The State filed a general denial. The Austin Court of Appeals stated in *Hays Consolidated Independent School District v. Valero Transmission Co.*, 645 S.W.2d 542 (Tex.App.—Austin 1982, writ ref'd n.r.e.), that:

Affirmative defenses, as opposed to a defendant's denials, are the propositions which a defendant may assert and interpose to defeat a prima facie case made by the plaintiff. They open the way for the defendant to introduce evidence which does not tend to rebut the factual propositions asserted in plaintiff's case, but which seeks to establish an independent reason why the plaintiff should not recover.

The State's argument is that proof of prescription or dedication are not matters of avoidance or affirmative defenses, or, even if they are, TEX.R.CIV.P. 94, requiring affirmative pleading of such matters, does not apply to declaratory judgment actions brought under the Act.

Villa Nova asserts that § 61.017(b) establishes a prima facie case that the landward boundary of the area subject to public easement is a line 200 feet from the line of mean low tide once it has been shown that there is a line of vegetation consistently following a line *more than* 200 feet from the seaward line of mean low tide. Villa Nova further asserts that in order to obtain a "final court adjudication establish[ing] the line in another place," § 61.017(b), the State must prove that the public has acquired an easement over the area in question.

■ The burden of proof is on the party claiming the easement to prove the requisite elements. *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397 (1944); *Koonce v. J.E. Brite Estate*, 655 S.W.2d 329 (Tex. App.—San Antonio 1983), *rev'd on other grounds*, 663 S.W.2d 451 (Tex.1984); *Davis v. Carriker*, 536 S.W.2d 246 (Tex.Civ.App. —Amarillo 1976, writ ref'd n.r.e.). Although a prima facie case establishing the landward boundary of the area subject to public easement may indeed be the intent of § 61.017(b), the *assertion* of a public easement is not an affirmative defense in a suit brought seeking a declaratory judgment under the Act. The purpose of TEX. R.CIV.P. 94, which requires that affirmative defenses be pled, is to give the oppos-

ing party notice of the defensive issues to be tried. *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754 (Tex. 1980); *Hunter v. Carter*, 476 S.W.2d 41 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.). One of the main purposes of the Act is to provide a means by which the public can acquire the right to use the beach area between the vegetation line and the line of mean low tide by proving "a right of use or easement."

Villa Nova filed this suit seeking an adjudication of the location of the line of vegetation and its "right to construct improvements up to said line." Suit was brought pursuant to § 61.019 which permits a littoral owner[2] "whose rights are determined or affected" by the Act to bring suit for a declaratory judgment against the State. We find it incongruous for one to seek a declaratory judgment under the Act, as Villa Nova seeks in the instant case, and at the same time not be on notice of the public's right to acquire "a right of use or easement" over the area in question under the very same Act.

Villa Nova sought a declaration of its right to build on the area, necessarily *requiring* a determination of whether the public "has acquired a right of use or easement to or over the area by prescription, dedication, or has retained a right by virtue of continuous right in the public." § 61.-012.

■ Even if the assertion of an easement is an affirmative defense in this case, the State was not required to plead it. Although not argued by the State, there is an exception to the general rule requiring pleading of matters of avoidance and affirmative defenses. When a plaintiff anticipates defensive matters in his pleadings, and pleads them, a defendant may rely upon the defenses even though his only pleading is a general denial. *American Communications Telecommunications, Inc. v. Commerce North Bank*, 691 S.W.2d 44 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Browning v. Holloway*, 620 S.W.2d

---

**2.** A "littoral owner" is the owner of land adja-    cent to the shore. § 61.001(4).

611 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 626 S.W.2d 485 (Tex. 1981); *Greenbelt Electric Cooperative, Inc. v. Johnson*, 608 S.W.2d 320 (Tex.Civ. App.—Amarillo 1980, no writ); *Armstrong v. Southern State Bank*, 430 S.W.2d 940 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *Raney v. White*, 267 S.W.2d 199 (Tex.Civ.App.—San Antonio 1954, writ ref'd). In its First Amended Original Petition, Villa Nova set forth, verbatim, §§ 61.011 and 61.013 of the Act, clearly in anticipation of prescription and dedication claims. Villa Nova's first point of error is overruled.

■ However, before the area could even be subject to the public's "right of use or easement," the trial court had to determine that Villa Nova's existing seawall and the line of vegetation are one-in-the-same.

The "line of vegetation" is "the extreme seaward boundary of natural vegetation which spreads continuously inland." § 61.-001(2). The area subject to public "right of use or easement" is located between the line of vegetation and the line of mean low tide. *See* §§ 61.001(5), 61.011, 61.012, 61.-016, 61.017; *Seaway Co. v. Attorney General*, 375 S.W.2d 923 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.). Obviously the landward boundary of this area would be the line of vegetation and can be easily determined where there is a clearly marked line of vegetation running across the area in question. When there is no clearly marked line of vegetation in the area, such as in the case before us, the Act provides a manner for determining its location.[3] Section 61.016 states that "in any area in which there is no clearly marked vegetation line ... recourse shall be to the nearest clearly marked line of vegetation on each side of the unmarked area." Essentially, a line is drawn connecting the two points, which then becomes the line of vegetation. If the line of vegetation follows a consistent path more than 200 feet from the seaward line of mean low tide, then "the 200

foot line shall constitute the landward boundary of the area subject to public easement until a final court adjudication establishes the line in another place." § 61.-017(b).

The judgment reads that "[t]he landward boundary of the public right of use and easement ... is ... coextensive with [Villa Nova's] existing seawall." Dr. Robert Morton, a research scientist with the University of Texas, has studied the Texas coast since 1973. He testified regarding his determination of where the line of vegetation is located on the Villa Nova property. Dr. Morton utilized two aerial photographs of South Padre Island, one taken in January of 1955, and the other taken in July of 1962. Both photographs depict the area of the Villa Nova property. The 1962 photograph shows the Villa Nova Resort and its existing seawall. The 1955 photograph shows the coast of South Padre Island prior to the construction of the Villa Nova Resort. The approximate location of the Villa Nova property was marked on the 1955 photograph by Dr. Morton. Dr. Morton testified that he marked two lines on the photographs, the most seaward line being a line that defines the seaward bound of "sparse discontinuous vegetation and low bering sand dunes," and "a more landward irregular line that would coincide with the line of continuous vegetation." Dr. Morton went on to state that Villa Nova's existing seawall, pictured in the 1962 photograph, "would coincide with the line of sparse discontinuous vegetation and low bering sand dunes."

Mr. Montemayor, a civil engineer and licensed land surveyor, testified as to how he determined where the line of vegetation is located in relation to the Villa Nova property. He used the method described in § 61.016 to place the line of vegetation in the position shown on our drawing. Mr. Montemayor went to the nearest point south of the Villa Nova property to where he felt there was "some semblance of vege-

---

**3.** It is undisputed that there is no clearly marked line of vegetation in the area of the    Villa Nova Resort.

tation," which he described as "very skimpy," and marked that point on a plat of the South Padre Island area. He then went to a point north of the Villa Nova property where the vegetation was "even more skimpy than the south end ... but there was some semblance of vegetation." At both points he "averaged out what [he] thought was the vegetation line" and then set the point and surveyed to it. Mr. Montemayor then connected the two points with a straight line.

Dr. Morton compared the plat prepared by Mr. Montemayor with his determination of where the vegetation line is located according to his interpretation of aerial photographs taken in February of 1984. Dr. Morton testified that the southern point chosen by Mr. Montemayor represents the general area of "the seaward most extent of the low sand dunes and sparse vegetation." He also testified that Mr. Montemayor's northern point roughly coincides with "the seaward extent of the sparse discontinuous vegetation."

The evidence presented through these two experts is sufficient to support the trial court's determination that the line of vegetation was "coextensive" with Villa Nova's existing seawall.

Points of error two through seven challenge the sufficiency of the evidence. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L. Rev. 361 (1960).

By their second and third points of error, Villa Nova challenges the factual and legal sufficiency of the evidence to support the trial court's finding that the public has acquired a right of use and an easement over the area by prescription.

■ An easement by prescription is obtained by proving the elements of adverse possession. *Moody v. White*, 593 S.W.2d 372 (Tex.Civ.App.—Corpus Christi 1979, no writ); *see also Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622 (1950); *City of Houston v. Church*, 554 S.W.2d 242 (Tex.Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.). In order to successfully claim an easement by prescription on behalf of the public, the State must show: (1) possession of the land; (2) use or enjoyment of it; (3) an adverse or hostile claim; (4) an inclusive dominion over the area and appropriation of it for public use and benefit; and, (5) for more than the ten year statutory period. *Moody v. White*, 593 S.W.2d at 377; *see also Ortiz v. Spann*, 671 S.W.2d 909 (Tex. App.—Corpus Christi 1984, writ ref'd n.r. e.); *Seaway Co. v. Attorney General*, 375 S.W.2d at 937.

■ The court heard testimony from fourteen witnesses concerning their own personal use of the South Padre Island beaches in general, as well as their observations of the use of the beach by the public. The testimony covered a period of time ranging from as early as 1923 to the time of the trial. The witnesses were from various walks of life and their testimony, for the most part, was very similar and will be summarized as follows. The public used the beach from the water's edge up to and into the sand dunes and vegetation, utilizing the entire island, from the southern tip to the northern end. The major activities engaged in were swimming, fishing, camping, hunting, picnicking, beachcombing and sunbathing. Most witnesses said that they assumed the beach was open to the public and that there were no restrictions on the extent of the public's right to use the sandy area of the beach between the dunes and the water. The testimony established that these activities were going on well in excess of 10 years prior to the construction of the Villa Nova Resort. This evidence meets the requirements necessary to establish an easement by prescription. Similar evidence was previously held by this Court to be sufficient to establish such a claim in *Moody v. White*, 593 S.W.2d at 377–78.

**128** ■ ▬▬▬▬▬▬▬▬▬▬

Villa Nova's second and third points of error are overruled.

■ By its fourth and fifth points of error, Villa Nova challenges the factual and legal sufficiency of the evidence to support the trial court's finding that the public has acquired a right of use and easement over the area in question by dedication. The elements of implied dedication are: (1) the landowner induced the belief that he intended to dedicate the area in question to public use; (2) the landowner was competent to do so, i.e., had fee simple title; (3) the public relied on the acts of the landowner and will be served by the dedication; and, (4) there was an offer and acceptance of the dedication. *Lindner v. Hill,* 691 S.W.2d 590 (Tex.1985); *Moody v. White,* 593 S.W.2d at 378; *Seaway Co. v. Attorney General,* 375 S.W.2d at 936. Public use need not be shown for any particular length of time in order to support a finding of dedication. *Seaway v. Attorney General,* 375 S.W.2d at 936.

■ Answers to interrogatories filed by Villa Nova indicate that the Villa Nova Resort, formerly known as the Sandy Retreat, was constructed sometime in 1956. Testimony summarized above establishes that the public used the beach many years prior to the construction of the Resort. Intent to dedicate may be implied by the grantor's conduct, open acts, or the surrounding circumstances. *Moody v. White,* 593 S.W.2d at 379. The fact that prior to 1956, the public was permitted to use and enjoy the area between the line of vegetation and the line of mean low tide is indicative of an intent to dedicate the area to the public. Furthermore, even after the resort was constructed, the mere fact that a seawall was erected which operated to segregate the resort from "the beach" is sufficient to induce a belief that the owner intended to dedicate the area seaward of the seawall to public use. There is no question that either Villa Nova or its predecessors in interest were competent to dedicate the area to public use. Obviously the public relied on the acts manifesting an intent to dedicate by making use of the

area. The public service accomplished by such dedication is the ability of the public to continue to make use of the area. The use itself supports the final element of implied dedication, acceptance of the dedication by the public. *See Moody v. White,* 593 S.W.2d at 379. Villa Nova's fourth and fifth points of error are overruled.

By its sixth and seventh points of error, Villa Nova challenges the factual and legal sufficiency of the evidence to support the trial court's finding that the public has acquired a right of use and easement over the area "by continuous use of this area by the public." The third manner by which the public can acquire "a right of use or easement" over the area is "by virtue of continuous *right* in the public." §§ 61.011, 61.012 [emphasis ours]. The Act does not mention "continuous *use by* the public" [emphasis ours] as a means of acquiring "a right of use or easement." In *Moody v. White,* 593 S.W.2d at 379, this Court equated "continuous right in the public" with "the common law doctrine of custom and usage as a means for acquiring the beaches of Texas for the general public." Although it may be that the trial court was merely "paraphrasing" the language of the Act, we decline to broaden an area which the legislature has clearly delineated. However, since we have already determined that the trial court's judgment can be affirmed on either the theory of prescription or dedication, the disposition of Villa Nova's sixth and seventh points of error would not affect the outcome of the appeal. Accordingly, we do not reach the merits of the points of error. TEX.R. CIV.P. 451, 452.

By its eighth point of error, Villa Nova contends that § 61.016 and § 61.017 mandate that a line 200 feet landward of mean low tide constitutes the landward boundary of the area subject to public easement when there is no clearly marked vegetation line in the area. Villa Nova asserts that the trial court erred in not so finding.

■ A logical reading of § 61.016(c) reveals that the 200–foot line referred to there is only applicable when there is *no*

clearly marked line of vegetation *anywhere*. To read it any other way would render sections (a) and (b) superfluous. If there were no clearly marked lines of vegetation on either side of the subject area, *then* section (c) would establish the line at 200 feet seaward of mean low tide. In this case, Dr. Morton and Mr. Montemayor testified that there were such points on either side of the Villa Nova property. Thus, § 61.016(c) is inapplicable.

 The 200–foot line referred to in § 61.017(b) is established when a vegetation line (either actual or as determined by the method described in § 61.016) consistently follows a line *more than* 200 feet from mean low tide. However, the 200 foot line constitutes "the landward boundary of the area subject to public easement *until* a final court adjudication establishes the line in another place." § 61.017(b) [emphasis ours]. This clearly anticipates proof of "a right of use or easement to or over the area by prescription, dedication, or ... by virtue of continuous right in the public."

Having upheld the trial court's finding that the public has acquired a right of use and easement over the area by prescription and dedication, the trial court was correct in "establish[ing] the line [of vegetation] in another place," i.e. at Villa Nova's existing seawall. Point of error number eight is overruled.

 By its ninth and final point of error, Villa Nova contends that the trial court erred in declining to admit Plaintiff's Exhibit No. 4 into evidence. Plaintiff's Exhibit No. 4 is an "Agreed Temporary Injunction," entered into as the result of a suit by the State against the Sandy Retreat Beach Club, Villa Nova's predecessor in interest. In the temporary injunction order, the State, through the Attorney General, stipulated that "neither the public nor the State of Texas has acquired a right of use for the [same area involved in the case before us], either by prescription, dedication or a continuous right." Villa Nova contends that the exhibit should have been admitted and the State estopped to assert an inconsistent position. The State asserts that TEX.REV.

CIV.STAT.ANN. art. 4411 (Vernon 1976) precludes the admissibility of the exhibit. Article 4411 states that "[n]o admission, agreement or waiver, made by the Attorney General, in any action or suit in which the State is a party, shall prejudice the rights of the State." Plaintiff's Exhibit No. 4 clearly comes within the scope of art. 4411. Point of error number nine is overruled.

The judgment of the trial court is AFFIRMED.