

## NUMBER 13-09-00018-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

MARC RAMIREZ,                                                          Appellant,

v.

CALHOUN COUNTY,                                                       Appellee.

### On appeal from the County Court at Law No. 1
### of Calhoun County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

Appellant, Marc Ramirez, appeals the trial court's judgment declaring that dedicated

and prescriptive easements exist in favor of appellee, Calhoun County ("County"), for the

use of a .29 acre tract of Ramirez's land located in Calhoun County between Bay Avenue[1]

and Lavaca Bay.  By two issues, Ramirez contends that: (1) the evidence is insufficient to

---

[1] The record indicates that Bay Avenue is also known as Ocean Drive North; for clarity and consistency, we refer to this roadway as Bay Avenue.

support some of the trial court's findings of fact; (2) the trial court's conclusions of law are erroneous; and (3) he is entitled to attorney's fees. We affirm.

## I. BACKGROUND

On September 17, 2007, the County filed a petition for declaratory judgment requesting that the trial court declare a prescriptive easement in favor of the County over a 1.33 acre tract of land, .29 acres of which are owned by Marc Ramirez.[2] The present action was pursued by the County after Ramirez's mother, Dorothy Ramirez, allegedly planted palm trees on Ramirez's tract, thereby blocking some of the dirt roads that cut through the property. The County requested that the trial court enter a declaratory judgment granting it a prescriptive easement over the land on the basis that the land had "been used for over 20 years by the public in conjunction with the operation and use of the public boat ramp on Lavaca Bay at Magnolia Beach." The County later amended its petition to additionally assert that an easement of the .29 acre tract had been dedicated to the public by either actual or implied dedication. Ramirez denied the County's allegations and asserted a counterclaim alleging that the County's claims were "groundless and brought in bad faith, or . . . for the purpose of harassment." The trial court heard the following evidence at a bench trial on November 13, 2008.

## A. Transfer of Property from Hubbard to Hughes

John Jay Hubbard testified that in 1995 he purchased land from Herma and Richard Turpen. Although Hubbard knew that a portion of the land purchased was part of the "old Tilke and Crocker Addition" and was known as Block 34, he was unaware of the exact boundaries of his property. In 2002, James Edward Grant conducted a survey of Hughes's land (the "Grant survey"). The Grant survey indicates that Block 34 contains a 1.33 acre

---

[2] Richard Hughes owns the remaining 1.04 acres; however, Hughes entered into a settlement with the County and is no longer a party to the underlying suit or to this appeal.

tract of land located between Bay Avenue and Lavaca Bay. The lower left margin of the Grant survey includes several notes. The first note states, "Survey performed without the benefit of a title report[.]" The second note states, "1.33 acres shown hereon was originally part of Block 34. Is currently in use as a public beach and is shown for reference purposes only. No record of title transfer has been found. An attorney should be consulted as ownership has possibly passed to the public." Before the Grant survey was conducted, Hubbard was unaware that he possibly held title to the 1.33 acre tract located on the seaward side of Bay Avenue.

In August 2003, Hubbard sold 11.175 acres of Block 34 to Richard Hughes. Hubbard testified that he warned Hughes that he was uncertain about his rights in the 1.33 acre tract. Hubbard testified that he told Hughes,

> Listen, irregardless [sic], if I own it based on deed . . . the public has been using this property for probably 50 years, and I would pretty well count on the fact that you will not be able to use that property any time in the future because the public has used it for so long, it's probably fallen to the public domain laws.

The deed involved in the sale from Hubbard to Hughes was admitted into evidence and contains an attachment entitled "Exhibit 'B'" that provides:

> 1.33 acres shown hereon was originally part of Block 34, is currently in use as a public beach and is shown on survey given to borrower on August 8, 2003 signed by James Edward Grant registered professional land surveyor Texas No. 4742.
>
> An attorney should be consulted at the expense of the undersigned borrower Richard Earl Hughes, Jr. as ownership has possibly passed to the public.
>
> /signed/
> Richard Earl Hughes Jr.

On cross-examination, Hubbard testified that he did not intend Exhibit 'B' to serve as a dedication of land to the County, and that Exhibit 'B' was included because he "was covering [him]self to make sure that [Hughes] didn't go out there and do something like try

3

to build on it and try to claim it as something or stop people from using it . . . ." When asked whether, during his ownership, he consented to public use of the 1.33 acre tract, Hubbard stated, "I wouldn't say that because they were using it before I ever owned it." However, Hubbard admitted that he had never told members of the public that they could not use the 1.33 acre tract. Additionally, Hubbard stated that on November 23, 2007, four years after signing the original deed, he was presented with, and signed, a correction deed that did not include "Exhibit 'B'" or any other disclaimer regarding the 1.33 acre tract.

**B.      Transfer of Property from Hughes to Ramirez**

Ramirez testified that he owns two houses situated on a parcel of property separated from Magnolia Beach by Bay Avenue and a .29 acre tract of land located between the roadway and the beach. In 2007, Ramirez purchased land surrounding his homes, including the .29 acre tract (which was a portion of Hughes's 1.33 acre tract), from Hughes. Ramirez testified that, because he would not be purchasing all of the land owned by Hughes, he hired Bennie Galvan ("Bennie") to conduct a partition survey. The following appeared on the face of the partition survey: "The .29 acre tract as shown was originally part of Block 34, is currently in use as a public beach and is shown for reference purposes only. No record of title transfer has been found. An attorney should be consulted as ownership has possibly passed to the public." Ramirez testified that he was not aware of this language; however, Bennie testified that he discussed the language with both Hughes and Ramirez.

Ramirez testified that: (1) he wanted to purchase the .29 acre tract in order to maintain an unobstructed view of Lavaca Bay and to build a pier in the future; (2) when he purchased the .29 acre tract he was aware that dirt roads cut through it and facilitated the public's access to the beach; (3) he was aware that the public used the property; and (4)

4

since purchasing the property he has allowed the public to drive through and park on it. Ramirez also testified that he maintains the property by mowing. When asked whether he had given the public permission to use the .29 acre tract, Ramirez responded, "I haven't ran nobody off."

## C.    Other Evidence

Leroy Belk, Calhoun County Commissioner from November 11, 1974 to December 31, 2000, testified that he was familiar with the disputed land. Belk testified that in the years that he served as commissioner, the public picnicked on, drove on, and played on the .29 acre tract. Belk testified that while he was commissioner, he did not put anyone on notice that the County was adversely claiming the property because he believed that the County owned the property. Moreover, Belk testified that in his years as commissioner, the County mowed and maintained the .29 acre tract and that he would have resisted if anyone denied the public access to the property.

Current Calhoun County Commissioner, Roger Galvan ("Roger"), testified that he has served as commissioner since 2000, and that the public uses the disputed property "all the time." Roger also testified that the County maintains it "all the time" and would not have spent County funds to maintain the property if it was "private property."

Debra McClurkan, a clerktographer[3] for Calhoun County Appraisal District (the "tax office"), testified that the tax office's records indicate that when Hughes bought Block 34 in 2003, it was comprised of only ten acres. In 2005, Hughes presented the tax office with a copy of the Grant survey, prompting the tax office to amend its records to indicate that Block 34 was comprised of 12.51 acres; this acreage included the 1.33 acre tract. McClurkan testified that, despite the disclaimers on the Grant survey, the tax office placed

---

[3] McClurkan's testimony revealed that a clerktographer is a "mapper" in charge of updating and maintaining plat maps.

5

the property on the 2005 tax roll, and for the first time, began to tax the 1.33 acres on the seaward side of Bay Avenue. Upon the 2007 sale of property from Hughes to Ramirez, the tax office assigned a new tax identification number to the .29 acre tract. The tax office valued the .29 acre tract at $13,380 and taxed Ramirez accordingly. McClurkan testified that the tax office would have placed a nominal value on the .29 acre tract if it considered it to be public property. However, McClurkan also testified that the tax office is an independent governmental agency that has no binding authority over Calhoun County or the County's position regarding property ownership.

Terry Ruddick, a registered land surveyor, testified that he reviewed various deeds and plats in order to conduct a review of the Grant survey. A 1909 plat filed by the original founders of the Tilke and Crocker Addition showed Bay Avenue running parallel to Lavaca Bay, but no land seaward of Bay Avenue is shown. The 1909 plat also contains the following language: "All Streets represented on the above Map are hereby dedicated and conveyed to the public." Ruddick testified that this language dedicated Bay Avenue to the public. However, Ruddick also testified that the actual location of Bay Avenue does not match the plat exactly; instead of Bay Avenue abutting the beach, as is reflected in the 1909 plat, the disputed land runs between the beach and Bay Avenue. Additionally, Ruddick testified that portions of Block 34 were conveyed between 1909 and 1916 and that the deeds facilitating these conveyances describe the lots being conveyed as "[a]djacent to Bay Avenue." Ruddick further testified that a 1948 plat traces the lots of Block 34 that were conveyed by deed. The 1948 plat, like the 1909 plat, does not show any land seaward of Bay Avenue. Ruddick opined that after the 1909 dedication, Bay Avenue became the boundary of Block 34. Ruddick testified that the Grant survey should not have included the 1.33 acres of land seaward of Bay Avenue as part of Block 34.

6

Following a bench trial, the trial court entered a final judgment in favor of the County, declaring that the County holds prescriptive and dedicated easements over the .29 acre tract and denying Ramirez's counterclaim for attorney's fees and damages.[4] The trial court entered findings of fact and conclusions of law, and this appeal ensued.

## II. SUFFICIENCY

In his first issue, Ramirez contends that the evidence is legally and factually insufficient to support the trial court's findings of fact that the County holds both a prescriptive easement and an easement by implied dedication for public use on his .29 acre tract. Ramirez also contends that the trial court's conclusions of law are incorrect.

### A.    Standard of Review

A trial court's findings of fact in a bench trial "have the same force and dignity as the jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.–Dallas 1997, writ denied) (en banc). Because legal and factual sufficiency of the evidence standards of review govern appeals of non-jury trials on the merits, it is incumbent upon the appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Carrasco v. Stewart*, 224 S.W.3d 363, 366-67 (Tex. App.–El Paso 2006, no pet.). "When a party appeals from a non-jury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question." *Id.* at 367.

In conducting a legal sufficiency review, we must consider evidence in the light most favorable to the trial court's findings and indulge every reasonable inference that would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)*.* We credit

---

[4] Ramirez does not appeal the trial court's denial of his counterclaim.

favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *See id.* at 827. In reviewing factual sufficiency, we consider and weigh all of the evidence and will "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Fact findings are not conclusive when, as in this case, a complete reporter's record appears in the record if the contrary is established as a matter of law or if there is no evidence to support the finding. *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).

A trial court's conclusions of law are reviewed de novo and may be reversed only if they are erroneous as a matter of law. *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *Id.* Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

## B.    Prescriptive Easement

Ramirez contends that the trial court erred when it found an easement by prescription because the County failed to establish that it "adversely possessed"[5] the .29 acre tract for a period of ten years or more.

---

[5] We note that although the elements of an adverse possession claim and a claim of prescriptive easement are identical, the two claims are fundamentally different. While an adverse possession claim involves a party's assertion of a right of ownership of land, *see Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 196 (Tex. 2003), a claim of prescriptive easement involves a party's assertion of a privilege of use of land. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). Consequently, the practical effect of each claim is significantly different. This case does not involve an adverse possession claim, and there was no adjudication that the County was unlawfully in actual possession of Ramirez's property. Accordingly, we review the evidence to determine whether it is sufficient to support the trial court's finding that the County acquired a prescriptive easement over the .29 acre tract by open, notorious, continuous, exclusive, and adverse use for ten years or more. *See id.* at 673.

8

Ramirez disputes the following findings:

> The Court finds that Calhoun County has had possession of the land, has used and enjoyed it on behalf of the public, maintained it, and done so adversely to the private ownership rights of [sic] hostile claim of anyone else, for more than the 10 year statutory period.
>
> . . . .
>
> No one has ever attempted to or exercised private ownership rights over this .29 acre tract until Dorothy and Marc Ramirez began to do so in 2007.
>
> . . . .
>
> There is not any evidence of prior owner's acquiescence to the public use of this land or comingled [sic] use of this .29 acre tract, other than that of . . . Marc . . . Ramirez since Marc Ramirez purchased the property in 2007.

*1. Applicable Law*

As distinguished from the establishment of an easement by implied dedication where the focus is on the intent or actions of the alleged easement's grantor, an easement by prescription rests on the claimant's adverse actions under color of right. *Allen v. Allen*, 280 S.W.3d 366, 377 (Tex. App.–Amarillo 2008, pet. denied); *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.–Austin 1998, pet. denied). A person acquires a prescriptive easement by the open, notorious, continuous, exclusive, and adverse use of someone else's land for ten years or more. *See Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979). The party claiming the existence of a prescriptive easement has the burden of proof to establish each element by a preponderance of the evidence. *See id*. Evidence of long-continued public use alone is insufficient to support a claim of prescriptive easement. *See Barstow v. State*, 742 S.W.2d 495, 501-02 (Tex. App.–Austin 1987, writ denied); *Dailey v. Alarid*, 486 S.W.2d 620, 623 (Tex. App.–Tyler 1972, writ ref'd n.r.e.).

*2. Exclusivity*

9

Specifically, Ramirez argues that the public's use of the property does not create a prescriptive easement in favor of the County because his contemporaneous usage of the .29 acre tract demonstrates that the public's use was merely permissive and not adverse to his rights.

"It has long been the law in Texas that when a landowner and the claimant of an easement both use the same [property], the use by the claimant is not exclusive of the owner's use and therefore will not be considered adverse." *Brooks*, 578 S.W.2d at 673; *see Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987) (finding no exclusivity where landowner and claimant both used road); *Wilson v. McGuffin*, 749 S.W.2d 606, 610 (Tex. App.–Corpus Christi 1988, writ denied) (finding no evidence of exclusive use where it was uncontroverted that both the landowner and neighboring landowner both freely used the landowner's roadway). In *Scott v. Cannon*, the Austin Court of Appeals was asked to determine whether the requirement of exclusivity was proven where the parties involved in the dispute used a roadway jointly. 959 S.W.2d 712, 721-22 (Tex. App.–Austin 1998, pet. denied). *Scott* distinguished the aforementioned cases by noting that in those cases, "the claimants were trying to establish an easement by prescription based on continuous use alone" and that "[t]here was no evidence in any of those cases other than use of the road to establish an adverse claim of right." *Id.* at 722. *Scott* held that joint use does not prevent the establishment of a prescriptive easement where there are acts independent of continuous use that show that the claimant's use is adverse. *Id.* at 722.

In the present case, the County presented evidence that the public picnicked on, drove on, parked on, and played on the .29 acre tract. Although Ramirez testified that he maintained the disputed property, Belk testified that from approximately 1974 to 2000, the County maintained the .29 acre tract. Roger testified that since 2000, the County has

10

continued to maintain the property. The trial court, as fact finder, determines the credibility of the witnesses and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819. Accordingly, the trial court was reasonable in concluding that the County has maintained the property since 1974. *See id.* The County's maintenance of the .29 acre tract for more than ten years is evidence of an act of an adverse claim of right independent of the public's continuous use. *See Scott*, 959 S.W.2d at 722. Because the evidence demonstrates both joint use and independent acts to show adversity, the purported joint use claimed by Ramirez is not fatal to the County's claim for a prescriptive easement. *See id.*

### 3. Adversity

Ramirez does not dispute that the public's use of the .29 acre tract was open and notorious; instead, he asserts that there is insufficient evidence that the public adversely used the disputed property for ten years. Ramirez argues that the evidence is insufficient to support the previously stated findings because: (1) the tax office assigned the .29 acre tract a tax identification number and valued it at $13,380 instead of giving it a nominal value; (2) McClurkan "expressly sought approval of the County to tax" Ramirez; (3) Hubbard, Hughes, and Ramirez "testified to their private ownership of the property"; (4) Former Commissioner Belk testified that he did not claim the property adversely to anyone; and (5) Commissioner Galvan "admitted that if the County is claiming adverse possession under his watch, this has not occurred for 10 years prior to the filing of suit" because at the time of trial, he had not served as commissioner for ten years. Based on our review of the evidence, we cannot agree.

In *Moody v. White*, this Court upheld a trial court judgment that the public had obtained a prescriptive easement over a portion of beach where "[f]or many years in

11

excess of the 10 year statutory period, the general public used the beach as their own: hunting, fishing, swimming, boating, sunning, and effecting many more uses." 593 S.W.2d 372, 377-78 (Tex. App.–Corpus Christi 1979, no writ). Similarly, in *Villa Nova Resort, Inc. v. State*, we concluded that the evidence was legally and factually sufficient to support a trial court's finding that a prescriptive easement in favor of the public existed over a beach where there was evidence that the public had used the beach to swim, fish, camp, hunt, picnic, and sunbathe for over sixty years. 711 S.W.2d 120, 127 (Tex. App.–Corpus Christi 1986, no writ). Ramirez argues that *Moody* and *Villa Nova Resort* are not applicable to the present case because both cases involve enforcement of the Texas Open Beaches Act ("OBA").[6] Although the present case does not involve enforcement of the OBA, OBA case law is instructive because it requires courts to determine the existence of prescriptive easements and dedications. *See* TEX. NAT. RES. CODE ANN. § 61.011(a) (Vernon Supp. 2009). Accordingly, we conclude that *Moody* and *Villa Nova Resort* are applicable.

In the present case, the trial court heard testimony from witnesses concerning their personal knowledge and use of the .29 acre tract. Belk testified that from 1974 to 2000, the public drove on, played on, and picnicked on the .29 acre tract, that roads formed as a result of the public's extensive use cut through it, and that the County maintained it. Belk also testified that during his term he did not attempt to adversely possess the .29 acre tract because he believed that the County owned the property. He also stated that he would

---

[6] Prior to 1958, it was thought that the state owned the Texas coastal beaches. *Brannan v. State*, No. 01-08-00179-CV, 2009 WL 2837037, at *7 (Tex. App.–Houston [1st Dist.] Aug. 28, 2009, no pet. h.). In *Luttes*, the Texas Supreme Court held that the state owned only "wet beach," the land on the Gulf side of the high tide. *Luttes v. State*, 159 Tex. 500, 324 S.W.2d 167, 191-93 (1958). "Dry beach," the land area extending from the mean high tide line to the line of vegetation, belonged to private property owners. *Id.* The following year, the Texas Legislature passed the Texas Open Beaches Act ("OBA") in direct response to *Luttes*. The OBA provides that "if the public has acquired a right of use or easement to or over an area by prescription, dedication, or has retained a right by virtue of continuous right in the public, the public shall have the free and unrestricted right of ingress and egress to [both the wet beach and dry beach]." TEX. NAT. RES. CODE ANN. § 61.011(a) (Vernon Supp. 2009). Thus, the OBA "protects the public's right of access to and use of public beaches when title to the land belongs to private owners." *Brannan*, 2009 WL 2837037, at *7.

have resisted if someone had told him to get off of the property.

Ed Abernathy, a Calhoun County resident, testified that since he began visiting Magnolia Beach in the 1960s, the public has used the disputed property "to go and throw . . . cast nets and park, go to the beach and fish and drive through there and park . . . ." Abernathy testified that he drives through the disputed property "nearly every day" to access the public boat ramp. According to Abernathy, the public uses the property "on a daily basis; most of the year." Cecile Anderson testified that he has visited Magnolia Beach for seventy-five years and that he and other members of the public have parked on the disputed property for "many years." Arlen Bailey, another resident, testified that he has visited Magnolia Beach for seventy-nine years, has always assumed that the disputed property is "public land," and that it is common for the public to park on the disputed land.

Hubbard testified that when he purchased Block 34 in 1995, he was unaware of his ownership of the .29 acre tract until the 2002 Grant survey. Hubbard also testified that when he sold Block 34 to Hughes, he told Hughes that the public had been using the .29 acre tract "for probably 50 years." Hubbard also included language in the deed informing Hughes of the possibility that the disputed land had "passed to the public." Although a correction deed removing this language and including a legal description of the .29 acre tract was introduced into evidence, it was not signed by Hubbard until after Hughes conveyed the property to Ramirez and the County brought the present suit.

Moreover, although the tax office records indicate that the .29 acre tract has a tax identification number and is valued at over $13,000, the evidence does not indicate that the tax office "expressly sought approval of the County to tax" the property. McClurkan testified that she spoke to her supervisor in the tax office to determine whether and how to tax the property; however, McClurkan also testified that the tax office is an independent

13

governmental agency that has no binding authority over the County.

Ramirez also complains that the trial court placed "great weight" on the "disclaimers" that appeared on the Grant survey, the Hubbard/Hughes deed, and Bennie's partition survey. Ramirez argues that "[t]hese disclaimers have no legal significance to the proper outcome of the case" because each "disclaimer" arose from the Grant survey, which was conducted without the benefit of a title report. While we agree that these "disclaimers" do not establish, as a matter of law, that a prescriptive easement exists in favor of the County, they provide some evidence that there was extensive public use of the .29 acre tract.

Based on the foregoing, we conclude that the evidence is legally and factually sufficient to support the trial court's findings and that the trial court did not err in concluding that the County has a prescriptive easement to use the .29 acre tract. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Villa Nova*, 711 S.W.2d at 127-28; *Moody*, 593 S.W.2d at 377-78. Ramirez's first issue is overruled to the extent it relates to the prescriptive easement.

## C. Easement by Implied Dedication

Ramirez also contends that the evidence is legally and factually insufficient to support an easement by implied dedication.

*1. Applicable Law*

"Dedication is the appropriation of land, or an easement therein, by the owner, for the use of the public." *Van Dam v. Lewis*, No. 04-08-00443-CV, 2009 WL 3644027, at *2 (Tex. App.–San Antonio Nov. 4, 2009, no pet. h.). "Once dedicated, a landowner 'reserves no rights that are incompatible with the full enjoyment of the public.'" *Id.* (quoting *Scott*, 959 S.W.2d at 718). An implied dedication requires a clear and unequivocal intention on the part of the landowner to appropriate the land for public use. *Id.*; *Gutierrez v. County of*

14

*Zapata*, 951 S.W.2d 831, 838 (Tex. App.–San Antonio 1997, no writ). The following elements are required to establish dedication: "(1) the landowner induced the belief that the landowner intended to dedicate the [property] to public use; (2) the landowner was competent to do so; (3) the public relied on the landowner's actions and will be served by the dedication; and (4) there was an offer and acceptance." *Van Dam*, 2009 WL 3644027, at **2-3 (citing *Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 256 (Tex. 1984)).

    *2. Analysis*

    Ramirez contends that "[t]o the extent the Findings were intended to have some connection to an implied dedication, there can be no presumption of an intent to dedicate the property to the public." Specifically, Ramirez begins by arguing that the trial court's finding that "[t]he land from the road towards the bay (North East side of Bay Avenue) has always been used and considered as public beach and so used by the public" is "contraverted [sic] by conclusive evidence to the contrary." To support this contention, Ramirez points to the trial court's finding that "[n]o tracts of land next to Block 34 on the northeast side [seaward side] of Bay Avenue were ever conveyed to anyone by deed or otherwise until after the Jim Grant survey of December 12, 2002." Ramirez essentially argues that because the disputed property was conveyed by deed after December 12, 2002, it has not always been considered public beach; however, Ramirez does not cite to authority supporting this argument, and we find none.

    As previously discussed, the August 2003 deed from Hubbard to Hughes contains language informing Hughes of the possibility that the land had "passed to the public" and does not contain a legal description of land seaward of Bay Avenue. In addition, the partition survey obtained by Ramirez contains similar language. Although the correction

15

deed removed the language and included a legal description of the .29 acre tract, it was not signed until after the County brought the present suit. The disputed property does not appear in any surveys prior to the 2002 Grant survey. Moreover, after examining deeds, plats, and the location of Bay Avenue, Ruddick testified that the disputed property should not have been included in the Grant survey.

Ramirez also argues that the trial court's findings that "the public and land owners in Block 34 recognized Bay Avenue as the boundary to Block 34 and considered the land between the road and the bay as public property as so dedicated and shown [sic] the plat as Bay Avenue" is erroneous because "there is no evidence of any clear and unequivocal act or declaration to set the property . . . apart for public use." We disagree.

As previously discussed, there is ample evidence that the public used the disputed property for more than ten years before the present action commenced. However, as a general rule, donative intent may not be inferred solely from evidence that the public used the property for a long period of time without protest or dispute by the owner. *See Greenway Parks Home Owners Ass'n v. City of Dallas*, 159 Tex. 46, 312 S.W.2d 235, 241 (1958). "The intention to dedicate must be shown by something more than an omission or failure to act or acquiesce on the part of the owner." *Id.* The requisite intent "may be inferred when there is evidence of some *additional* factor that *implies* a donative intention *when considered in light of* the owner's acquiescence in the public's use . . . ." *Barstow v. State*, 742 S.W.2d 495, 506 (Tex. App.–Austin 1988, writ denied) (emphasis in original).

Hubbard, as well as Hughes, testified that during their respective periods of ownership, they did not intend to dedicate the disputed property to the public. However, the 1909 plat filed by the original owners of the Tilke and Crocker Addition attempted to expressly dedicate Bay Avenue to the public. *See Gutierrez*, 951 S.W.2d at 837

16

("Generally, an express dedication is accomplished by deed or a written document."). Although the property in dispute is not used as a roadway, and neither party argues that the disputed property was expressly dedicated, the 1909 plat's illustration portrays Bay Avenue as abutting the beach at Lavaca Bay. Ruddick testified that Bay Avenue lies further inland than depicted on the 1909 plat and that the disputed property lies on the seaward side of Bay Avenue. Although this evidence indicates that the disputed property might not have been expressly dedicated by the original founders, the 1909 plat offers evidence of a clear and unequivocal act or declaration to set the property from the landward side of Bay Avenue to the beach apart for public use. *See Villa Nova Resort*, 711 S.W.2d at 128 ("Intent need not be explicit but can be implied by the grantor's conduct, open acts, or circumstances which embody the intent.") (citing *Moody*, 593 S.W.2d at 379)). Moreover, the trial court was presented with evidence that the County has maintained the property since 1974. *See Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 681 (Tex. App.–Corpus Christi 1998, pet. denied) (recognizing that evidence that an owner permitted public authorities to "grade, repair, or otherwise improve" a roadway is evidence of donative intent); *see also Barstow*, 742 S.W.2d at 506 (noting that "something more" is shown where the owner "with apparent knowledge, also acquiesced in the expenditure of public funds by public authorities to adapt, improve, or maintain" the property for public use).

We conclude that the evidence is legally and factually sufficient to support the trial court's findings and that the trial court did not err in concluding that the County has an easement by implied dedication for the benefit of the public. *See City of Keller*, 168 S.W.3d at 827; *Cain*, 709 S.W.2d at 176; *Villa Nova*, 711 S.W.2d at 128; *Moody*, 593 S.W.2d at 378-79. The remainder of Ramirez's first issue is overruled.

### III. Conclusion

Having overruled Ramirez's first issue, we need not address Ramirez's second issue regarding attorney's fees. *See* Tex. R. App. P. 47.1. The trial court's judgment is affirmed.

_____

_____

ROGELIO VALDEZ
Chief Justice

Delivered and filed
the 29th day of December, 2009.